WESTERN SHOE GALLERY, INC., Stuart E. Conn, a sole proprietorship d/b/a Silvermint, Plaintiffs,

v.

DUTY FREE SHOPPERS, LTD.; Okadaya of Yokahama; Space Creation, Inc.; Pacifico Creative Service, Inc.; Pacifico Creative Service "California", Inc.; Japan Travel Bureau International, Inc.; Western Travel Plaza, Inc.; Nippon Travel Agency Pacific, Inc.; Jetour U.S.A., Inc.; Nippon Express U.S.A., Inc.; Kintetsu International Express (U.S.A.), Inc.; Pacific Leisure Management Corp.; Japanese Tour Operators Association; Franciscan Lines, Inc.; Tokyu Travels Service; Saga Leather International, Inc. d/b/a Saga Leather Boutique; Hiroaki Takayama, d/b/a San–I Classic Japan; and Marketing Feeders, d/b/a Rawhide of California, Defendants.

No. C–82–0625 EFL.

United States District Court, N.D. California.

Sept. 7, 1984.

Donnici & Lupo, Peter J. Donnici, K. Richard Lindow, Jr., Dennis C. Kerwin, Ray E. Smith, San Francisco, Cal., for plaintiffs.

Wayne D. Skigen, Niesar, Moody, Hill, Massey & Kregstein, Marvin D. Morgenstein, Morgenstein, Ladd & Jubelirer, Martin J. Rosen, Michael J. Stecher, Michael S. Rubin, Silver, Rosen, Fischer & Stecher, William L. Jaeger, Gary L. Halling, Broad, Schulz, Larson & Wineberg, San Francisco, Cal., Irving Scher, Jay N. Fastow, Weil, Gotshal & Manges, New York City, Daniel Rapaport, Stephen J. Doi, Nichols, Doi & Rapaport, Nathan Lane III, James E. Murray, Graham & James, San Francisco, Cal., Hoken S. Seki, Seki, Jarvis & Lynch, Chicago, Ill., Charles R. Breyer, Jonathan R. Bass, Coblentz, Cahen, McCabe & Breyer, Matthew M. Fishgold, Frederick L. Talcott, San Francisco, Cal., George E. Jarvis, Seki, Jarvis & Lynch, Los Angeles, Cal., Norman C. Hile, George A. Yuhas, Orrick, Herrington & Sutcliffe, San Francisco, Cal., James L. Hunt, Richard D. Zimmerman, McCutchen, Doyle, Brown & Enersen, Mitchell Blumenthal, Law Offices of Alexander Anolik, P.C., Graydon S. Staring, Charles Coleman, Lillick, McHose & Charles, San Francisco, Cal., for defendants.

Hiroaki Takayama dba San-I Classic Japan, pro per.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LYNCH, District Judge.

The complaint in this antitrust action alleges a concerted refusal by the defendants to deal with the plaintiffs. This matter is before the court on the defendants' motion for summary judgment based on the statute of limitations. After reviewing the papers and argument of counsel, the court concludes that the defendants' motion must be granted in part and denied in part. The defendants cannot be held liable for any damages caused by unlawful acts committed more than four years before this suit was filed; however, the statute of limitations does not protect the defendants from liability for any damages caused by unlawful acts committed within four years of the date this suit was filed.

## I. FACTS

During the relevant period, plaintiff Stuart Conn ("Conn") operated gift and clothing shops that catered to Japanese tourists visiting San Francisco, California. Western Shoe Gallery, Inc. and Silvermint were two of the names under which Conn operated.[1] The defendants are a diverse

---

**1.** Another of Conn's business entities, the Upstairs Corporation, has already been dismissed from this action because its corporate status had been suspended by state authorities, and it therefore lacked capacity to sue. The defendants have now moved for summary judgment against Western Shoe Gallery, Inc. on the same ground; Western Shoe Gallery's corporate status was suspended on April 2, 1984. The defendants' motion is denied on this issue, however, because Conn has shown that the corporate status of Western Shoe Gallery, Inc. was

group; most significantly, they include competing gift shops and package tour companies, all catering to the Japanese tourist trade. All of the tour operators are American subsidiaries or agents of Japanese Corporations, and they were all members of the Japanese Tour Operator's Association ("JTOA"), which is also a defendant.

The tour operators provided, among other things, bus tours around northern California. The tours frequently included stops at gift shops oriented towards Japanese tourists. Conn alleges that the defendants conspired to boycott him and to drive him out of the relevant market because he refused to pay secret rebates to the tour operators; the tour operators allegedly brought tourists to the defendant gift shops because these shops paid rebates based generally upon the value of the purchases made at the store by tourists brought in by the particular tour operator. The tourists were unaware of the rebates. Conn further alleges that the tour operators disparaged his stores and attempted to control where the tourists shopped even when they were not in an organized group. Conn brought this action alleging violations of sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 & 2), section 2(c) of the Robinson-Patman Act (15 U.S.C. § 13(c)), state antitrust laws, and state tort law.

## II. DISCUSSION

### A. Defendants' Liability for Acts Committed Before February 9, 1978

■ The defendants bring this motion for summary judgment on the ground that the statute of limitations has run on each of Conn's claims.[2] The longest of the statutes in question is 15 U.S.C. section 15b, which requires that suits for damages under the Sherman Act be brought "within four years after the cause of action accrued." After reviewing the affidavits and documents submitted by the defendants,

the court finds no genuine issue of material fact regarding Conn's knowledge; Conn clearly had actual knowledge of the defendants' scheme more than four years before February 9, 1982, when this lawsuit was filed. Indeed, on November 28, 1977, Conn's current attorney wrote a letter to one of the defendants; that letter outlined the very conspiracy alleged in this action and threatened to file suit. Therefore, Conn may not recover any damages caused by acts committed before February 9, 1978. Conn attempts to avoid the statute of limitations altogether by invoking the doctrine of fraudulent concealment. *See Mt. Hood Stages, Inc. v. Greyhound Corp.*, 555 F.2d 687, 698 (9th Cir.1977), *cert. denied*, 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980). This contention is completely without merit.

■ Although Conn's fraudulent concealment argument suffers from many flaws, it is sufficient to note that by 1977, at the latest, Conn had *actual knowledge* of the operative facts which are the basis of his claims. Regardless of any actions taken by the defendants to conceal their conduct, Conn's actual knowledge of the alleged antitrust violation prevents him from asserting fraudulent concealment. *See Aurora Enterprises v. National Broadcasting Co.*, 688 F.2d 689, 693 (9th Cir.1982); *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 249–50 (9th Cir.1978); *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir.1975).

### B. Defendants' Liability for Acts Committed After February 9, 1978

The defendants argue that this *entire action* is barred under *In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68 (9th Cir.), *cert. denied*, 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979), and *David G. Orgell, Inc. v. Geary's Stores, Inc.*, 640 F.2d 936 (9th Cir.), *cert. denied*, 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981),

---

reinstated as of July 27, 1984. Throughout this opinion, the plaintiffs are referred to simply as "Conn" because it is clear that the defendants did not distinguish between the various entities controlled by Mr. Conn.

2. The defendants have also argued that Conn's equitable claims are barred by laches. We need not decide this claim, however, because Conn's counsel stated at oral argument that Conn had abandoned his claims for equitable relief.

because *all* of Conn's causes of action accrued when he learned of the alleged conspiracy. The court disagrees. Conn may recover damages caused by acts committed after February 9, 1978.

> Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business.... In the context of a continuing conspiracy to violate the antitrust laws ... this has usually been understood to mean that each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act.

*Air Pollution*, 591 F.2d at 71 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971)).

Thus, Conn may recover only for damages caused by forbidden "overt acts" within the limitations period. *Air Pollution*, 591 F.2d at 71. In the instant case, discovery provided by the defendants reveals many recent overt acts of the conspiracy. No fewer than six of the tour operator defendants have stated in answers to interrogatories that they continue to receive rebates from some or all of the gift shop defendants. The amount of each rebate is generally calculated as a percentage of the sales made to the tourists brought in by the particular tour operator. The defendants admit that they do not inform the tourists about the rebates.

■ Documents produced by the defendants also raise material questions of fact as to whether the JTOA has been used as a vehicle to maintain and enforce the group boycott. In 1979, for example, one member apparently felt it necessary to address the JTOA membership to dispel rumors

that it was a "spy" for Conn. In 1980, another member had to explain why one of Conn's advertisements appeared in a tourist map of the United States. Also in 1980, one of the defendant tour operators threatened to withdraw from the JTOA because of another defendant's "movement toward" Conn and a rival tour operator allied with Conn. Policy discussions were also held among JTOA members; at one meeting, members stated that they planned to steer tourists to the defendant gift shops and to collect commissions. Other discovered documents reveal that the American subsidiaries of Japanese companies continued, until at least 1980, to send back to Japan intelligence reports concerning Conn and his operations.[3]

On the strength of this evidence, the court concludes that there do exist genuine issues of material fact as to whether, prior to 1978, the alleged concerted refusal to deal was "irrevocable, immutable, permanent and final" as those terms are used in the *Air Pollution* case. 591 F.2d at 71.

The plaintiff in *Air Pollution* alleged a concerted refusal by the defendants to purchase plaintiff's pollution control device. The defendants had initially refused to purchase plaintiff's device more than four years before the suit was filed. The court found that the statute of limitations began running on plaintiff's entire claim at the time of this initial refusal. The *Air Pollution* court followed two Fifth Circuit cases and ruled that

> [w]here the violation is final at its impact, for example, where the plaintiff's business is immediately and permanently destroyed, or where an actionable wrong is by its nature permanent at initiation without further acts, then the acts causing damage are unrepeated, and suit must be brought within the limitations period and upon the initial act.

---

**3.** Conn also contends that in 1980 two of the defendant tour operators demanded rebates from Conn and that certain of his employees did authorize such payments for a limited period of time. The evidence on this issue, however, consists only of Conn's answers to the defendants' interrogatories; these answers were

verified by Mr. Conn, but only on information and belief. The court cannot consider this evidence because it does not meet the requirements of rule 56(e) of the Federal Rules of Civil Procedure. *S & S Logging Co. v. Barker*, 366 F.2d 617, 624 n. 7 (9th Cir.1966).

*Air Pollution,* 591 F.2d at 72 (quoting *Poster Exchange, Inc. v. National Screen Service Corp.,* 517 F.2d 117, 126–27 (5th Cir.1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976)); *see also Imperial Point Colonnades Condominium, Inc. v. Mangurian,* 549 F.2d 1029 (5th Cir.), *cert. denied,* 434 U.S. 859, 98 S.Ct. 185, 54 L.Ed.2d 132 (1977) (also cited in *Air Pollution,* 591 F.2d at 72).

The *Air Pollution* court concluded that any violation was final before the limitations period despite the fact that contacts initiated by plaintiff within the limitations period were again rebuffed. The court described these contacts as "forlorn inquiries" because the defendants had indicated "clearly and irrevocably an intent to look to their own devices or modifications thereof for the [next] model year." 591 F.2d at 72. The court explained that the relevant market was unique because the integration of original equipment automobile parts required much planning and lead time. The court also noted that plaintiff's pollution control device staff had been substantially disassembled before the limitations period and concluded that the initial refusals to deal with plaintiff had been "irrevocable, immutable, permanent and final." *Id.*

The facts at bar are very different from those present in *Air Pollution.* Most significantly, the alleged concerted refusal to deal with Conn could only be maintained through affirmative conduct by the defendants. The defendant gift shop operators continued to pay the secret rebates and the defendant tour operators had to channel or steer each new group of tourists away from Conn and toward the defendant gift shops. Indeed, in one sense it is the individual tourist who decides whether to deal with Conn, and the defendant tour operators had to exert influence on each new tourist arriving in San Francisco. Moreover, as discussed above, the JTOA may have been used as a vehicle for keeping the conspiracy together; any such actions within the limitations period would be additional "overt acts;" such acts would necessarily indicate that the *concerted* refusal to deal was not "irrevocable, immutable, permanent and final." *Air Pollution,* 591 F.2d at 72.

These facts also distinguish the instant case from *David Orgell, Inc. v. Geary's Stores, Inc.,* 640 F.2d 936 (9th Cir.), *cert. denied,* 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981), in which the defendants refused to sell goods to the plaintiff both within and without the limitations period. The court found that the plaintiff's later offers were "forlorn inquiries" and held that the suit was barred under *Air Pollution.* *Orgell,* 640 F.2d at 638. However, the refusal, within the limitations period, of plaintiff Orgell's two offers to buy the defendants' wares cannot compare in scope, frequency, or effort exerted with the affirmative conduct of the defendants in this case.[4]

Our conclusion is reinforced by an analysis of the purposes of the statute of limitations in antitrust cases. Those purposes are "to put old liabilities to rest and to

---

**4.** The short and cryptic opinion in the *Orgell* case can conceivably be read to hold that a concerted refusal to deal is *always* final from its inception. The *Orgell* court did not explain why the later offers were "forlorn inquiries by one all of whose reasonable hopes had been previously dashed;" this contrasts sharply with the approach of the *Air Pollution* court, which justified its conclusion by reference to the characteristics of the automobile original equipment supply market. Moreover, the *Poster Exchange* case, upon which *Air Pollution* was based, clearly rejected the argument that a concerted refusal to deal is *always* final from its inception. Indeed, the *Poster Exchange* court explicitly assumed that any new refusal to deal *ordinarily* would constitute a new overt act giving rise to a new cause of action. 517 F.2d at 128–29. For this reason, the *Air Pollution* court found it necessary to explain why the new refusal to deal in that case merely responded to a "forlorn inquiry" and did not give rise to a new cause of action. This court therefore declines to adopt the interpretation of *Orgell* suggested above. Without a clear statement from the Ninth Circuit, we will not adopt such a rigid rule, which goes well beyond *Air Pollution* and *Poster Exchange,* and which conflicts with the basic premise that "each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act ...." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971).

relieve courts and parties from 'stale' claims where the best evidence may no longer be available. P. Areeda and D. Turner, Antitrust Law ¶ 325 at 119 (1978). The defendants are not exposed to liability for acts committed before February 9, 1978; the repose purpose of the statute of limitations applies with full force to these acts. However, no useful purpose is served by immunizing the defendants' *continued* affirmative acts that allegedly injure Conn unlawfully. "Employing the limitations statute to immunize recent repetition or continuation of violations and damages occasioned thereby not only extends the statute beyond its purpose, but also conflicts with the policies of vigorous enforcement of private rights through private actions." *Poster Exchange*, 517 F.2d at 127–28. In addition, the bulk of the evidence relevant to defendants' more recent acts will also be of a recent vintage.

III.  Conclusion

For the foregoing reasons, the court concludes that the statute of limitations embodied in 15 U.S.C. section 15b bars any antitrust claim for damages caused by acts committed before February 9, 1978; the statute of limitations does not, however, bar Conn's antitrust claims for damages caused by acts committed after February 9, 1978.[5]

IT IS SO ORDERED.

---

**5.** The applicable limitations period for Conn's state law antitrust claims is also four years. Cal.Bus. & Prof.Code §§ 16750.1 & 16755. A three year statute of limitations governs Conn's claims under the California Unfair Practices Act. Cal.Bus. & Prof.Code §§ 17000–101. *See* Cal.Civ.Proc.Code § 338(1). Conn's state common law claims are governed by a two year statute of limitations. Cal.Civ.Proc.Code § 339(1). The parties have not addressed, and the court does not decide, whether the continuing violation rationale of *Zenith, Poster Exchange,* and *Air Pollution* applies to Conn's state law claims.